United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Cristy Nelson, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 19-23730-Civ-Scola |
| | ) |
| MLB Hotel Manager, LLC and MLB | ) |
| Fairwinds, LLC, Defendants. | ) |

### Order Granting Motion for Summary Judgment

This matter is before the Court upon Defendants MLB Hotel Manager, LLC ("Hotel Manager") and MLB Fairwinds, LLC's ("Fairwinds") joint motion for summary judgment. (Defs.' Mot., for Summary Judgment, ECF No. 42.) This lawsuit pertains to the employment of Plaintiff Cristy Nelson at La Sombra Restaurant ("La Sombra"), located within the Fairwinds Hotel in Miami Beach, Florida. The Plaintiff is suing the Defendants for minimum wage and overtime payment violations under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq* ("FLSA"). The Defendants claim entitlement to summary judgment on the basis that the Plaintiff was in fact paid amounts in excess of the applicable minimum wage and overtime requirements, and that she is also therefore not entitled to relief on Count III for a declaration of rights, and the Defendants also argue that the Plaintiff was exempt from the minimum overtime requirements. Finally, Defendant Hotel Manager claims entitlement to summary judgment on the basis that it did not employ the Plaintiff. The Plaintiff counters that genuine issues of material fact preclude summary judgment. After a thorough review of the record and legal authorities, the Court agrees with the Defendants and **grants** their motion for summary judgment (**ECF No. 42**).

1. **Factual Background**

The Plaintiff was employed as a member of the waitstaff at La Sombra at the Fairwinds Hotel from January 2019 until June 2019. (Pl.'s Resp. to Defs.' Statement of Material Facts, ECF No. 51 at ¶3.) Although the parties dispute the relationship between Defendant Fairwinds, Defendant Hotel Manager, the Plaintiff, and the hotel itself, the parties do not dispute that all of the paystubs for the Plaintiff produced by the Defendants list Defendant Fairwinds as the payor. (*Id.* at ¶13.) At her deposition, the Plaintiff admitted that she was paid a *base wage* of at least $8.00 per hour. (*Id.* at ¶20.) The Plaintiff also received individual tips from customers that were not part of a tip pool (*id.* at ¶23) and a portion of a service charge that was charged by the employer and distributed to employees (*see infra*). During the relevant time period the minimum wage was

$8.46 per hour, 46 cents more than the Plaintiff's base wage, with an overtime rate of $12.69 per hour. *See* Florida Department of Economic Opportunity, Bureau of Labor Market Statistics, last visited December 17, 2020, https://floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2019-minimum-wage-poster/florida-minimum-wage-history-2000-2018.pdf?sfvrsn=4 ("Florida DEO, Bureau of Labor Market Statistics").

The parties do not dispute that an item identified as a 20% "service charge" appeared, at least after January 2019, on menus, checks, or both. Additionally, the Plaintiff does not dispute that her paystubs included a separate line item for compensation originating from a "service charge." (ECF No. 51 at ¶24; *see also* Defs.' Statement of Material Facts, ECF No. 41 at 250-261.) The Plaintiff also has not specifically disputed the Defendants' statement that "she was compensated a total gross rate of approximately $21.67 per hour"—assuming that the "service charge" is validly factored into the Plaintiff's wages. (ECF No. 51 at ¶24.) The parties' core dispute over the service charge is whether it was, for FLSA purposes, a bona fide commission that could be factored into wages or, alternatively, whether it was part of the Plaintiff's tips such that it could not be factored into the Plaintiff's wages. (*Id.*) The service charge was included on customer checks and to the extent the service charge was disclosed on menus at La Sombra, the menus stated: "The restaurant imposes an automatic, non-discretionary service charge of 20% on every customer's bill." (ECF No. 41 at 184, 264.) There is no dispute that the service charge was always chargeable to customers, although it was not disclosed on menus when La Sombra first opened in January 2019 and on some occasions La Sombra managers allowed the charge to be waived in response to customer complaints. (ECF No. 51 at ¶22.) Finally, portions of the revenue generated by the service charge were shared with La Sombra's General Manager, Javier Garcia, who had managerial responsibilities and performed waitstaff work for customers, such as delivering food and drinks. (Pl.'s Decl., ECF No. 50-6 at ¶16.)

### 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact

to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, admissions on file and other documents, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

There is no dispute in this case as to whether the Plaintiff was paid an amount that exceeds the applicable minimum wage and minimum overtime compensation. Rather, the question is whether the Defendants' minimum wage and overtime obligations were validly satisfied by amounts generated through a service charge. If that service charge was, as a matter of law, a tip, then it cannot be used to offset the Defendants' minimum wage and overtime obligations.

At the outset, the Court agrees with the Plaintiff's position that the Florida state minimum wage—not the Federal Minimum Wage—applies here. *See, e.g.*, *Touzout v. Am. Best Car Rental KF Corp.*, 15-61767-CV, 2017 WL 2541225, at *1 (S.D. Fla. June 12, 2017) (Matthewman, Mag. J.); *Isaula v. Chicago Restaurant Group, LLC*, No. 13–CV–24387–JLK, 2014 WL 3477917, at *2 n.4 (S.D. Fla. Jul. 11, 2014) (King, J.). The parties do not dispute that in 2019 the federal minimum wage was $7.25 and, under Florida state law, the minimum wage was $8.46 per hour with an overtime rate of $12.69 per hour. *See* Florida DEO, Bureau of Labor Market Statistics. Importantly, the parties also do not dispute that the Plaintiff "was compensated a total gross rate of approximately $21.67 per hour," an amount well in excess of the applicable

minimum wage and overtime. (ECF No. 51 at ¶24.) Rather than argue that her gross compensation fell below the applicable minimums, the Plaintiff argues that a portion of that compensation cannot be credited towards the Defendants' minimum wage and overtime obligations. In response to the Defendants' claim that the Plaintiff was paid $21.67 per hour, the Plaintiff only disputes that a "'service charge' was a service charge since it was not mandatory; it was more like a suggested gratuity." (*Id.*)

The FLSA's regulatory framework provides guidance as to the difference between a service charge and a tip. In describing a service charge, the relevant FLSA implementing regulations provide two "Examples of amounts not received as tips":

> (a) A compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received in applying the provisions of section 3(m) and 3(t). Similarly, where negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received.
>
> (b) As stated above, service charges and other similar sums which become part of the employer's gross receipts are not tips for the purposes of the Act. Where such sums are distributed by the employer to its employees, however, they may be used in their entirety to satisfy the monetary requirements of the Act.

29 C.F.R. § 531.55. These two subsections are presented as two "examples," in the plural form. They are not presented as a multi-factor test that requires the Court to find that an "amount received" has each characteristic of the two examples spelled out in 29 C.F.R. § 531.55. As such, the Court reasons that an amount received may be a service charge if it is covered by example (a), example (b), or both examples. As to example (a), the Court underscores two critical features. First, a service charge must be compulsory. Second, a service charge must be "imposed on a customer by an employer's establishment" as opposed to being imposed on a customer by the employees.

The features of example (a) for service charges contrast starkly with the U.S. Department of Labor's definition of a tip as:

> [A] sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from

> payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, and generally he has the right to determine who shall be the recipient of his gratuity. . . . Only tips actually received by an employee as money belonging to him which he may use as he chooses free of any control by the employer, may be counted in determining whether he is a "tipped employee" within the meaning of the [FLSA] . . . .

29 C.F.R. § 531.52. Thus, the key distinguishing features of a tip, as opposed to a service charge, are that a tip is voluntarily given (or not given), its amount is "determined solely by the customer," and the customer has the right to determine the recipient of the gratuity. *Id.*; *see also Compere v. Nusret Miami, LLC*, No. 19-CV-20277, 2020 WL 4464627, at *3 (S.D. Fla. May 31, 2020) (Singhal, J.) (granting summary judgment and explaining that "an 'essential element' of a tip is its voluntary nature, directed to a specific employee designated by the patron") (citing *U.S. v. Conforte*, 624 F.2d 869, 874 (9th Cir. 1980)).

The Court now turns to the facts pertaining to the service charge. The Defendants maintain that the service charge was a 20% charge "included in the check and on the menus" at La Sombra. (ECF No. 41 at 184, Alon Dep. At 32:13-19.) The Defendants describe the service charge as a "non-discretionary mandatory charge." (ECF No. 51 at ¶22.) The Defendants also submitted a copy of La Sombra's menu, which states at the bottom that: "The restaurant imposes an automatic, non-discretionary service charge of 20% on every customer's bill." (ECF No. 41 at 264.)

The Plaintiff, by contrast, claims that managers at the restaurant "had discretion to take off the Service Charge and it was routinely [removed] in response to guest complaints." (ECF No. 51 at ¶22.) Additionally, in response to the Defendants' statement of facts, the Plaintiff claims that "[w]hen La Sombra opened in January of 2019, the menu did not show that there was a 'service charge' included." (*Id.* at ¶22.) That response requires careful examination. The Plaintiff is *not* claiming that there was no service charge in January 2019. The Plaintiff is only claiming that "*the menu did not show*" a service charge. (*Id.* (emphasis added).) Her declaration provides more detail:

> Guests would complain[] that they were not aware that there was a "service charge" included on the check because when we first opened in January 2019 there was not anything written on the menu about a compulsory service charge. That language was added on a later version of the menu.

(ECF No. 50-6 at ¶10.) The Plaintiff's declaration not only concedes that a service charge existed in January 2019, it also corroborates the Defendants' claim that the service charge was not a voluntary tip. If guests were charged for that fee without prior notice, their payment of the fee was certainly not voluntary. A business's hidden fees are not the same as a customer's discretionary tip for good service. Finally, the Plaintiff points to the Defendant's concession that La Sombra did not include the service charge in its gross revenues. (ECF No. 51 at ¶24.)

The Court now applies the regulatory guidance to determine whether the charge at issue is a service charge or a tip. The parties do not dispute that the amount and ultimate recipient of the service charge proceeds were determined by the employer and not the employee. Rather, they strongly dispute whether the tip was "compulsory" (see 29 C.F.R. § 531.55(a)) or voluntarily given (see 29 C.F.R. § 531.52). Starting with the text of the service charge itself, the language on the menu is clear: "The restaurant imposes an automatic, non-discretionary service charge of 20% on every customer's bill." (ECF No. 41 at 264.) But the Plaintiff argues that the text of the charge disclosure and the restaurant's practices diverged. In her declaration, she states that the charge "was removed from guests['] checks frequently," that it was not included on "[m]any of the pool guest checks," and that it "was routinely taken off the check if a guest complained"—typically when "the food would take too long to come from the kitchen." (ECF No. 50-6 at ¶¶ 4, 7-9.) The Plaintiff also states that it "happened to [her] several times each week." (Id. at ¶10.) However, removal of the service charge was not the first response to dissatisfied customers. The Plaintiff states that "[i]f we were not able to make the guest happy by buying them a drink or des[s]ert the manager would remove the 'service charge' from the check." (Id. at ¶11.) Additionally, it appears that servers did not have plenary authority to waive the service charge. Rather, the Plaintiff's declaration states that when she "was working as a supervisor," management would authorize her to remove the service charge "in order to make a guest happy" and that when she "was working as a server" she had to wait for the General Manager to remove the service charge from checks. (Id. at ¶¶ 13, 16.)

This is not a novel argument—plaintiffs often try to characterize a service charge as a tip on the basis that it is sometimes waived. *See, e.g., Compere v. Nusret Miami, LLC*, No. 19-CV-20277, 2020 WL 4464627, at *3 (S.D. Fla. May 31, 2020) (Singhal, J.) ("[Plaintiffs argue that] because managers could, from time to time, decide not to charge the Service Charge to a particular table of patrons, the Service Charge is a 'tip'. This is simply incorrect as a matter of law."). Just like occasionally "buying [customers] a drink or des[s]ert" to resolve their complaints does not mean that customers had discretion over whether to pay for drinks or dessert at La Sombra, occasionally waiving the service charge

does not mean that it was a "tip" that customers had discretion to pay, or the amount and to whom it would be paid. "[W]hether a manager at the [restaurant] may choose not to charge it to a particular patron does not render it 'discretionary' for purposes of 29 C.F.R. § 531.32." *Compere*, 2020 WL 4464627 at *3.

The Plaintiff cites to non-binding case law that appears to hold that if a service charge does not "become part of the employer's gross receipts," then it is a tip—irrespective of whether it is compulsory, imposed on customers by the employer (as opposed to demanded from the customer by the employee), or distributed by the employer to its employees (as opposed to collected by the employees in the first instance and then remitted back to the employer). For example, in *Shaw v. Set Enterprises, Inc.*, the court held that "[i]n order to count a service charge as an offset to an employer's minimum wage liability, the service charge must have been included in the establishment's gross receipts and distributed by the employer to its employees." 241 F. Supp. 3d 1318, 1329 (S.D. Fla. 2017) (Dimitrouleas, J.) (citation and quotations omitted). *Shaw* is distinguishable because in that case, unlike here, the "fees were paid by the customers directly to the [employees], and the [employees] retained most of those fees. The [employer] did not collect, record, and redistribute the fees to the [employees]." *Id.* The Plaintiff's reliance on *McFeeley v. Jackson St. Entertainment, LLC*, is similarly misplaced. No. CIV.A. DKC 12-1019, 2012 WL 5928769 (D. Md. Nov. 26, 2012). Again, in that case, the "Plaintiffs were paid for dances directly by the clubs' patrons." *Id.* at *1.

In this case, although the Defendants concede that they did not record the fees in their books and records, they did collect and redistribute them, which satisfies the first example of a service charge under the implementing regulations. 29 C.F.R. § 531.55(a). The core features of a service charge are that it be compulsory and distributed by the employer to the employees—as opposed to being collected by the employee in the first instance, then sent back to the employer for redistribution to the employees. *See id.* ("[W]here negotiations between a hotel and a customer for banquet facilities include *amounts for distribution to employees* of the hotel, the amounts so distributed are not counted as tips received.") (emphasis added). While some courts have held that a service charge must be "recorded" in gross receipts, the Court declines to interpret the implementing regulations in that manner. *See McFeeley v. Jackson St. Entertainment, LLC,* No. CIV.A. DKC 12-1019, 2012 WL 5928769 (D. Md. Nov. 26, 2012) (The [employer] did not collect, record, and redistribute the fees to the [employees].); 29 C.F.R. § 531.55(b) ("As stated above, service charges and other similar sums *which become part of the employer's gross receipts* are not tips for the purposes of the Act.") (emphasis added). The Plaintiff has presented no binding authority for reading into the implementing regulations

an additional record-keeping obligation that does not exist on its face. The Court declines to broaden the scope of FLSA obligations in the absence of any binding authority to the contrary. Moreover, on a plain text reading of the implementing regulations, it appears that by collecting the service charge proceeds, those proceeds do in fact become a part of the employer's gross receipts until such time as they are distributed back to employees. Nevertheless, the Court's ruling rests on example (a), not example (b), of the implementing regulations. A compulsory charge collected by the employer is not a tip.

The last issue that the Plaintiff raises with respect to the service charge is the fact that Javier Garcia, General Manager of the restaurant, received a portion of the service charge. (ECF No. 60 at 6.) The Plaintiff relies on cases holding that a manager's participation in a *tip pool* (not a service charge) invalidates the tip pool and precludes the employer from offsetting its minimum wage and overtime requirements. *See Howard v. Second Chance Jai Alai LLC*, No. 5:15-CV-200-OC-PRL, 2016 WL 3349022, at *6 (M.D. Fla. June 16, 2016) ("If tipped employees are required to participate in a tip pool with any employee who does not customarily receive tips, then the tip pool is invalid and the employer is not permitted to take a 'tip credit.'"). Of course, the Defendants argue, and the Court has no found, that the service charge was a bona fide service charge and not a tip pool. The Plaintiff has not pointed to any authority for the proposition that a manager cannot participate in revenue generated by a service charge.

Nevertheless, even assuming, *arguendo*, that the prohibition on managers participating in tip pools also applies to service charges, Mr. Garcia falls into an exception that would allow him to participate in a tip pool. A manager may participate in a tip pool if he or she has "more than *de minimis* service interaction with customers." *Wajcman v. Inv. Corp. of Palm Beach*, No. 07-80912-CIV, 2008 WL 783741, at *3 (S.D. Fla. Mar. 20, 2008) (Hurley, J.). Other courts in this District have held that only employees who "have no customer contact . . . fall outside the definition of tipped employees." *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1315 (S.D. Fla. 2007) (Moreno, J.), *aff'd*, 291 F. App'x 310 (11th Cir. 2008). The notion of a manager wearing two hats in a restaurant is not unprecedented. The Plaintiff's declaration establishes that Mr. Garcia had more than *de minimis* service interaction with customers in addition to his managerial responsibilities. Indeed, her declaration indicates that when Mr. Garcia's customer service interactions and managerial responsibilities conflicted, he prioritized his customer-facing work over his managerial work. Specifically, the Plaintiff's declaration states that on "several instances" when she needed Mr. Garcia to work in a managerial function, she "had to wait for [him] to finish delivering food/drinks . . . ." (ECF No. 50-6 at

¶16.) Mr. Garcia also "would sometimes work behind the bar" in addition to "run[ning] food/drinks to help . . . ." (*Id.* at ¶19.) Where, as here, a manager has a mix of supervisory responsibilities and more than a *de minimis* customer-facing service role, such a manager may participate in a tip pool or, in this case, a service charge.

Finally, the Plaintiff's claim that the "time records" are incorrect with respect to four days of work over her five-month tenure with the Defendants does not change the outcome. While the Plaintiff denied that the "service charge" was a bona fide service charge as a matter of law, she never denied that if the service charge were factored into her wages—as the Court concludes it rightfully was—her total gross compensation was approximately $21.67. (ECF No. 51 at ¶24.) Even if the time records are wrong, the Plaintiff's compensation of $21.67 per hour defeats the only claims in this case, which are for minimum wage and overtime. Additionally, as the Plaintiff's prima facie claims cannot stand, the Court need not and does not reach the questions of whether Defendant Hotel Manager is an employer under the FLSA or whether both of the Defendants preserved an affirmative defense based on 29 U.S.C. § 207(i).

### 4. Conclusion

Based on the evidence presented by the parties, the Defendants are entitled to summary judgment on the basis that the Plaintiff's gross wages of $21.67 per hour, an amount that is undisputed and in excess of statutory minimums, are comprised of a valid service change and not a tip. Accordingly, the Court **grants** the Defendants' motion for summary judgment (**ECF No. 43**).

**Done and ordered** at Miami, Florida, on December 18, 2020.

_____
Robert N. Scola, Jr.
United States District Judge